## THE STATE v. FITZSIMMONS.

1. **Manslaughter:** EXCESSIVE PUNISHMENT: WHAT IS NOT. Defendant, in the day time, upon a public street, and in the presence of by-standers, to whom he might have appealed for protection, was engaged in an altercation with another, who, though unarmed, was his superior in physical strength. He was in danger of nothing more than physical chastisement, and this, it would seem, he might have avoided. But he resorted to the use of his revolver, and, after inflicting one mortal wound upon his adversary, he followed him in his flight and inflicted another:— *Held*, upon a conviction for manslaughter, that a sentence of six years in the penitentiary was not excessive.

*Appeal from Lucas District Court.*

FRIDAY, JUNE 6.

The defendant was accused by indictment of the crime of murder of the first degree. On the trial of the indictment he was convicted of manslaughter, and sentenced to a term of imprisonment in the penitentiary; and from this judgment he appeals.

*Mitchell & Penick,* for appellant.

*Smith McPherson, Attorney-general,* for the State.

REED, J.—The single proposition urged by counsel for defendant, in the argument of this case, is, that the punishment imposed on defendant by the judgment of the district court is excessive. We have, however, as the statute requires us to do, examined the whole record, and we are satisfied by our examination that no errors prejudicial to the rights of defendant were committed on the trial, or in the proceedings preliminary thereto, and we are also satisfied that the verdict is sustained by the evidence. We have also examined the case with special reference to the matter to which our attention was called in the argument, and we have to say with reference to it that it does not seem to us that any injustice is done the defend-

ant by the punishment imposed upon him by the judgment. There is great conflict in the testimony with reference to the transaction of the killing, but, putting upon it the construction most favorable to the defendant, it shows about the following state of facts: On the day of the transaction, Mills (the deceased) and a party of his associates went to the saloon in which defendant was employed as a bar-tender, for the purpose of creating a disturbance. The parties at the time were in a state of partial intoxication, having previously drank largely of beer at the place in which defendant was employed, and at another saloon in the town. When they entered the saloon, they requested defendant and another employe to give them more beer, but this was refused, for the reason, as was stated at the time, that the town marshal had forbidden the keepers of the saloon to sell the parties any more beer on that day. At this the parties became noisy and turbulent, and one of their number persisted, against defendant's objections, in shooting the balls on a pool-table in the saloon in an irregular and reckless manner. After protesting with this person for some time, and urging him to desist from using the table and balls in that manner, defendant finally ordered him to go out of the place, and, on his refusing to go, defendant and his brother, who was in the saloon at the time, although not an employe there, attempted to put him out. At this time defendant had a revolver in his hand; and his brother was armed with an iron bar some three feet in length. They procured these weapons from behind the bar, immediately before they commenced the attempt to eject the party from the room. They took hold of him and attempted to push him out of the house, defendant striking him one or two blows on the head with the revolver. Another employe in the saloon, who was also armed with a revolver, attempted to prevent the other members of Mills' party from interfering with defendant and his brother in their efforts to put the man out of the house, but without success, and the struggle resulted in a general fight between the two parties, in which defendant's brother

was knocked down and disarmed by one of the other party, and the other employe was also knocked down and beaten. In the melee, defendant and one of his party went out of the saloon, followed immediately by Mills and the man who had taken the iron bar from defendant's brother. The saloon was in the second story of the building, and, as these parties passed down the stairway, the man who came out with Mills struck defendant on the head with the iron bar, inflicting very considerable injuries to him. At the bottom of the stairway, Mills and the defendant clinched. After a moment's struggle, defendant discharged the pistol. Mills immediately separated from him, and started across the street on a run; defendant following him and fired two shots after him. Mills ran but a short distance, when he fell, and almost immediately expired. It was found that he had received two wounds, either of which was mortal. The judgment of the district court is that defendant be confined in the penitentiary for six years. We think this punishment is not excessive. The struggle between him and Mills took place in the open street, in the middle of the day, in the presence of a large number of people. Mills, although superior to defendant in physical strength, was unarmed. That defendant was not in such imminent peril as to justify the resort to a deadly weapon is clear. The most that can be said is that he was in danger of receiving physical chastisement, and there is no doubt that, if he had desired to avoid the conflict, he would, upon appealing to the by-standers, have been protected from that danger. Instead of taking that course, however, he resorted to the use of his revolver, and, after having inflicted one fatal wound on the person of his adversary, he followed him in his flight, and inflicted another. We think his conduct indicated an entire recklessness of consequences, and that the best interests of society demand that he should be punished with some degree of severity. The judgment of the district court is, therefore,

AFFIRMED.